COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Willis and Elder
Argued at Richmond, Virginia


CLINTON GAYLORD THOMAS
                                          OPINION BY
v.   Record No. 2736-96-2          JUDGE LARRY G. ELDER
                                        NOVEMBER 4, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Robert W. Duling, Judge

          Patricia P. Nagel, Assistant Public Defender
          (David J. Johnson, Public Defender, on
          brief), for appellant.

          Linwood T. Wells, Jr., Assistant Attorney
          General (Richard Cullen, Attorney General;
          Margaret Ann B. Walker, Assistant Attorney
          General, on brief), for appellee.


     Clinton G. Thomas (appellant) appeals his conviction of use

of a firearm during the commission of robbery in violation of

Code § 18.2-53.1.[1]  He contends the evidence was insufficient to

prove that the object he possessed and used during his robbery of

a cab driver was a "firearm."  For the reasons that follow, we

affirm.

                              I.

                            FACTS

     At trial, the evidence established that on June 9, 1996 at

about 10:30 p.m., the victim, a Richmond cab driver, picked up

appellant as his next fare.  Appellant sat in the back seat of

_____

     [1]In addition to violating Code § 18.2-53.1, appellant was
also convicted of robbery.  However, his robbery conviction is
not the subject of this appeal.

the cab and told the victim that he wished to be driven first to a house on "the 3500 block of Idlewood" to pick up his girlfriend and then to the airport.

When the victim arrived at the house, appellant told him to park the cab behind another parked car. Appellant then placed an object to the back of the victim's head. The victim reached behind his head and felt the tip of the object and testified that it "felt like" the barrel of a gun. He grabbed the object and started pulling it away from his head. Appellant responded by "jerking" the object out of the victim's hand and forcefully returning it to the back of the victim's head. Appellant then demanded that the victim give him all of his money, and the victim "pulled some cash out of one of [his] pockets and handed it to him." A short while later, the victim managed to flee from the cab with the keys to its ignition. At all times during the encounter with appellant, the victim "looked straight ahead," and he never <u>saw</u> the object placed by appellant against the back of his head. Instead, he only "felt what appeared to be . . . the barrel of a gun."

Appellant was arrested by police officers within the next thirty minutes. The arresting officers searched appellant and recovered a metallic, "blue steel," BB pistol from his right pants pocket. In this appeal, appellant does not question that the evidence proved the object felt by the victim in the cab was this BB pistol. The BB pistol recovered by the officers was

admitted into evidence as Commonwealth's exhibit number one and is contained in the record on appeal.  It has the size, weight, and shape of a small handgun.  The police officer who helped recover the BB pistol from appellant testified that he neither test-fired the pistol nor examined it to see if it contained any BBs.

## II.

## "FIREARM" UNDER CODE § 18.2-53.1

Appellant contends the evidence was insufficient to prove that the BB pistol he used during his robbery of the victim was a "firearm" under Code § 18.2-53.1.  Because the evidence proved that the BB pistol gave the appearance of having a firing capability, we disagree.

> Code § 18.2-53.1 states in relevant part:
> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery . . . ."

(Emphasis added).  In a prosecution under Code § 18.2-53.1, the Commonwealth is required to prove four elements:  (1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) that this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.  See Yarborough v.

-3-

Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994) (stating that "the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies"); Sprouse v. Commonwealth, 19 Va. App. 548, 551-52, 453 S.E.2d 303, 306 (1995) (stating that the Commonwealth must prove that "the object used to cause the victim to reasonably believe it was a firearm was, in fact, a firearm").

The General Assembly did not define the word "firearm" in Code § 18.2-53.1. However, the Virginia Supreme Court has previously construed the General Assembly's intended meaning of this term and has set forth parameters of what does and does not constitute a "firearm" under the statute. See Holloman v. Commonwealth, 221 Va. 196, 198-99, 269 S.E.2d 356, 357-58 (1980). First, because Code § 18.2-53.1 "is aimed at preventing actual physical injury or death," the term "firearm" includes any instrument that is capable of expelling a projectile by the force of gunpowder. See id.

In addition, the term "firearm" in Code § 18.2-53.1 includes some objects that are not capable of firing projectiles by an explosion of gunpowder. In Holloman, the Supreme Court held that any instrument that "gives the appearance" of having the capacity to propel a bullet by the force of gunpowder is a "firearm" under

-4-

Code § 18.2-53.1. See id. at 199, 269 S.E.2d at 358 (holding that a BB pistol that fires BBs by the force of a spring but resembled a .45 caliber handgun was a "firearm" because it "gave the appearance of having a firing capability"). The Supreme Court's rationale for this expanded meaning of "firearm" was twofold. First, it reasoned that the word "firearm" included instruments that merely appear to have a firing capability because the General Assembly intended Code § 18.2-53.1 "to discourage criminal conduct that produces fear of physical harm" and the victim of a crime "can be intimidated as much by a revolver that does not fire bullets as by one that does." Id. at 198, 269 S.E.2d at 358. In addition, the Supreme Court reasoned that, as a practical matter, a crime victim "cannot be required to distinguish between a loaded pistol and a spring gun when it is brandished during the commission of a felony." Id.

Applying these principles, this Court has held that a rusted, inoperable revolver was a "firearm" under Code § 18.2-53.1 because it "had not 'lost its identity as a firearm.'" Miller v. Commonwealth, 23 Va. App. 208, 213, 475 S.E.2d 828, 830 (1996). On the other hand, we have held that an object that appeared to the victim to be a gun but that the Commonwealth conceded was only a "toy pistol" was not "in fact, a firearm." Sprouse, 19 Va. App. at 551-52, 453 S.E.2d at 305-06.

Whether a particular object used by an accused during the commission of a felony was a firearm may be proved by direct

evidence, circumstantial evidence, or both. See McBride v.

Commonwealth, 24 Va. App. 603, 607, 484 S.E.2d 165, 167 (1997)

(en banc); Byers v. Commonwealth, 23 Va. App. 146, 150-51, 474

S.E.2d 852, 854 (1996). Prior case law indicates that, when

determining whether a particular object is a "firearm," the fact

finder may consider the victim's visual and nonvisual

observations of the object,[2] the victim's knowledge of firearms,[3]

the accused's representations about the object during the

commission of the felony,[4] expert testimony,[5] and the appearance

of the object itself when it is admitted into evidence.[6]

However, the evidence regarding the object must prove beyond a

reasonable doubt that it is a "firearm" as that term is used in

Code § 18.2-53.1, and when the evidence regarding the object is

purely circumstantial, it must exclude all reasonable hypotheses

of innocence. See Yarborough, 247 Va. at 218, 441 S.E.2d at 344;

---

[2]See Yarborough, 247 Va. at 216-17, 218-19, 441 S.E.2d at
343, 344; McBride, 24 Va. App. at 605, 607-08, 484 S.E.2d at 166,
168; Byers, 23 Va. App. at 149-50, 152, 474 S.E.2d at 854, 855;
Wilson v. Commonwealth, 19 Va. App. 535, 536, 537, 452 S.E.2d
884, 884, 885 (1995).

[3]See Wilson, 19 Va. App. at 536, 537, 452 S.E.2d at 885, 885.

[4]See Elmore v. Commonwealth, 22 Va. App. 424, 426, 429-30,
470 S.E.2d 588, 589, 590 (1996); see also McBride, 24 Va. App. at
605, 607-08, 484 S.E.2d at 166, 168; Byers, 23 Va. App. at
149-50, 152, 474 S.E.2d at 854, 855.

[5]Cf. Miller, 23 Va. App. at 210, 475 S.E.2d at 829
(considering a police officer's opinion regarding the feasibility
of restoring a rusted, inoperable revolver to working condition).

[6]See Holloman, 221 Va. at 197, 199, 269 S.E.2d at 357, 358;
Sprouse, 19 Va. App. at 550, 453 S.E.2d at 305.

<u>Byers</u>, 23 Va. App. at 150-52, 474 S.E.2d at 854-55.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). This Court does not substitute its judgment for that of the trier of fact. <u>Cable v. Commonwealth</u>, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). Instead, the trial court's judgment will not be set aside unless it appears that it is plainly wrong or without supporting evidence. <u>Josephs v. Commonwealth</u>, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (<u>en</u> <u>banc</u>).

We hold that the evidence was sufficient to prove that the BB pistol used by appellant while robbing the victim was a "firearm" under Code § 18.2-53.1. Both the victim's observations of the pistol during the robbery and an examination of the pistol itself, which was introduced into evidence, support the conclusion that it was an instrument that gave the appearance of having a firing capability. During the robbery, the victim grabbed the tip of the BB pistol with his hand and observed that it "felt like the barrel of a gun." In addition, an examination of the BB pistol reveals that it looks like a small handgun that is capable of firing bullets by the explosion of gunpowder. This direct evidence of the BB pistol's appearance excludes as a reasonable hypothesis the possibility that it is a mere "toy pistol."

For the foregoing reasons, we affirm the conviction of use of a firearm during the commission of robbery in violation of Code § 18.2-53.1.

<u>Affirmed.</u>