COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Frank
Argued at Alexandria, Virginia


BRIAN MICHAELS, s/k/a
 LT. BRIAN MICHAELS
                                        OPINION BY
v.   Record No. 1292-99-2         JUDGE ROBERT P. FRANK
                                        JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Margaret P. Spencer, Judge

          Christina E. Kearney (John A. Gibney, Jr.;
          Robert A. Dybing; Shuford, Rubin & Gibney, on
          briefs), for appellant.

          Linwood T. Wells, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Brian Michaels (appellant) was convicted in a bench trial of

criminal contempt, in violation of Code § 18.2-456.  On appeal,

appellant contends the trial court erred in:  1) accepting his

waiver of counsel when it failed to advise him of the nature of

the proceedings, the possible punishment, and the right to

court-appointed counsel; 2) failing to advise him of his right to

remain silent; 3) failing to give him the opportunity to present

evidence in his own behalf; 4) finding the evidence sufficient to

prove he acted with criminal intent; and 5) convicting him where

his duty existed only by implication.  We find that the evidence

was insufficient to convict appellant of contempt; therefore, we

reverse the conviction.

## I.  BACKGROUND

The facts are not controverted.  Murphy Hughes ("Hughes") was an inmate at the Richmond City Jail pending his trial.  At a hearing on January 21, 1999, the trial court continued Hughes' case until June 21, 1999, for a psychological evaluation at Central State Hospital.  The trial court issued a written order reflecting the continuance.[1]  The order was received by the City Jail, but Hughes was never transported to Central State Hospital.  No separate order was entered scheduling a psychological evaluation at Central State Hospital or directing that Hughes be transported to Central State Hospital.

On May 5, 1999, the trial court issued a rule to show cause against appellant, directing him to show cause why he should not be "found in contempt for failure to abide by the court's order of January 21, 1999 . . . ."

Pursuant to the show-cause order, appellant appeared before the trial court on May 7, 1999.  Appellant was a deputy sheriff for the City of Richmond and served as the supervisor of the records for the jail.  As supervisor, he oversaw other deputies who received transportation orders.

The following colloquy occurred between the trial court and the appellant:

> THE COURT:  This is a show cause hearing in which Lieutenant Michaels shall show cause, if any, why he should not be held in contempt because the defendant in Case F-98-4207, Mr. Murphy Hughes, has been held

---

[1] The order stated, in part, "For reasons satisfactory to the Court, this matter is continued to June 21, 1999 at 9:00 a.m. in order for the defendant to undergo inpatient psychological evaluation at Central State Hospital."

in the jail since January 21st, 1999, and was not sent to Central State Hospital.

Mr. Michaels, because you are before the Court on a show cause order, I would need to ask if you would like to obtain the services of an attorney.

THE DEFENDANT: No, ma'am.

THE COURT: You're prepared to go forward?

THE DEFENDANT: Yes, ma'am.

THE COURT: The Court has some questions for you. Why don't you step forward, raise your right hand, and be sworn in.

The court then conducted a direct examination of the appellant.

Q. Specifically as to this case, the Court has three questions. The first is, why was Mr. Murphy kept in jail after January 21st and not sent to Central State?

A. We had a couple of problems, ma'am. First off, the records room went under a change of personnel right around that time. We had a whole new staff brought in. And when the order did come in -- it was faxed to me on the 22nd -- it was read by one of the other deputies in the records room.

It should have been brought to my attention, because there should have been questions on it. It wasn't specifically stated in there that he was to be transported by the Sheriff's Office to Central State. Also, we didn't have a date or a time when he was to be admitted to Central State. If those questions had come to me or those concerns had come to me at the time, I, certainly, would have questioned it and I would have called the Court on it.

The first time I saw the order was when Ms. Dailey called me the other day about that, and I explained to her that, that was the first time I had seen it and the order does not say that we were to take him, so we would need a transportation order on this court order.

Q. So I understand it was not your decision but someone else's. It was the decision of another official in the Sheriff's Department that Mr. Hughes should remain incarcerated in the jail, but that was not your decision; is that correct?

A. Well, the decision wasn't consciously made to keep Mr. Hughes in the jail. When the order comes over from the Court, the order is read, and we update it in the system to ensure that the order is correct or what we have in the system is correct on the individual.

Q. But the decision that was made in relationship to this order was made by who? That's the question the Court has. Regardless of which decision was made, who made that decision to interpret this particular order in that particular manner?

A. That decision was made by another deputy in the office.

*    *    *    *    *    *    *

Q. My question is for this particular individual, who has not been convicted. He's not under probation supervision, so he can't be transferred by the probation department. He has not been released on bond, so he cannot be transferred by his defense attorney.

A. Correct.

Q. The Judge cannot transfer him. How would he be transferred?

A. That would fall on Sheriff's transportation.

Q. It's clear to you that the Sheriff's Department has the responsibility for seeing to it that this defendant gets to Central State?

A. Yes, ma'am, we do.

THE COURT: Are there any questions?

MS. REINER [Commonwealth's Attorney]: No, Judge.

THE COURT:  Any questions, Ms. Sheridan?

MS. SHERIDAN [Hughes' attorney]:  No ma'am.

THE COURT:  You may step down.

THE DEFENDANT:  Thank you, ma'am.

The court then proceeded to find appellant guilty of contempt.

THE COURT:  The Court will find that your conduct, in agreeing with your Deputy Dickerson, was intentional, willful, and deliberate.  It was mentally and professionally irresponsible.  It was in total disregard of the rights of the Commonwealth to bring this defendant to trial within the speedy trial rights that are set forth pursuant to 19.2-243.

\*       \*       \*       \*       \*       \*       \*

It showed a total lack of respect for the judicial branch of government, and it was, regrettably, ignorant of the legal consequences that the Court must uphold.

The Court is somewhat concerned that there is someone under your supervision, who is a records clerk, who is ignorant of statutory interpretation, [and] legal interpretation . . . .

I will find that as her supervisor, Ms. Dickerson's supervisor, since you were aware of the fact that you have violated the Court's order, the Court will hold you in contempt.  The court will impose a $1,000 fine and a 10-day jail sentence with 10 days suspended.  Thank you very much.

The appellant did not move to strike the evidence nor did he object to any of the trial court's procedures.

## II.  ANALYSIS

A.  <u>Procedural Default</u>

The Commonwealth contends appellant is procedurally barred from raising these issues. Appellant concedes that he did not object to the trial court's rulings at trial but maintains that the "ends of justice" and "good cause shown" exceptions in Rule 5A:18 apply. We will focus on the "ends of justice" exception.

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (citing Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991)); see also Rule 5A:18.

However, Rule 5A:18 provides for consideration of a ruling by the trial court that was not objected to at trial "to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "'The ends of justice exception is narrow and is to be used sparingly'" when an error at trial is "'clear, substantial and material.'" Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10-11 (1989)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Id. at 221, 487 S.E.2d at 272 (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)).

> In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth failed to prove an element of the offense. . . . [T]he appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur.

Id. at 221-22, 487 S.E.2d at 272-73 (emphasis in original).

Appellant argues that a miscarriage of justice occurred because the record clearly established that the continuance order did not state a clearly defined duty to transport Hughes to Central State Hospital; therefore, appellant contends that his conduct was not a crime.

Whether the ends of justice exception applies is inextricably linked to determination of the merits of this case. Because we hold that appellant committed no offense, the trial court's error was "clear, substantial and material;" therefore, we may apply the ends of justice exception.

B. Sufficiency of Evidence

We held in Wilson v. Collins, 27 Va. App. 411, 424, 499 S.E.2d 560, 566 (1998), as follows:

> A person is in "contempt" of a court order only if it is shown that he or she has violated its express terms. See Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977). "'[T]he process for contempt lies for disobedience of what is decreed, not for what may be decreed.'" Id. (quoting Taliaferro v. Horde's Adm'r, 22 Va. (1 Rand.) 242, 247 (1822)).
>
> "[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." Id. (citation omitted).
>
> If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him or her by a court's decree, the alleged contemnor's actions do not constitute contempt. Id. at 10-11, 235 S.E.2d at 309.

The Supreme Court of Virginia held in <u>Winn v. Winn</u>, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977), as follows:

> As a general rule, "before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." <u>Wood v. Goodson</u>, 253 Ark. 196, 203, 485 S.W.2d 213, 217 (1972). This is also the rule followed in Virginia. In <u>Taliaferro v. Horde's Adm'r.</u>, 22 Va. (1 Rand.) 242, 247 (1822), we said that "(t)he process for contempt lies for disobedience of what is decreed, not for what may be decreed." <u>See</u> <u>also</u> <u>French v. Pobst</u>, 203 Va. 704, 710, 127 S.E.2d 137, 141 (1962).

In this case, the court order upon which the contempt show cause was predicated did not expressly impose a duty upon appellant or any other personnel from the Sheriff's office to transport Hughes to Central State Hospital. Appellant testified that no one in his office interpreted the continuance order as a transportation order. At best, the duty to transport is implied. Therefore, appellant did not violate the trial court's order, and his actions did not constitute contempt.

### III. CONCLUSION

For these reasons, we apply the ends of justice exception pursuant to Rule 5A:18 and hold that the evidence was insufficient to convict appellant of contempt. We do not reach appellant's remaining assignments of error because they are rendered moot by our reversal on the sufficiency of the evidence.

<u>Reversed and dismissed.</u>