682 S.E.2d 115

Duane Elmer STARTIN, Jr.

v.

COMMONWEALTH of Virginia.

Record No. 2837–08–4.

Court of Appeals of Virginia,
Alexandria.

Sept. 8, 2009.

Mark Wise, Assistant Public Defender (Office of the Public Defender, on briefs), for appellant.

Craig W. Stallard, Assistant Attorney General (William C. Mims, Attorney General, on brief), for appellee.

Present: ELDER, BEALES and POWELL, JJ.

CLEO E. POWELL, Judge.

Duane Elmer Startin, Jr., appellant, appeals two convictions for use of a firearm during the commission of a felony, in violation of Code § 18.2–53.1. Appellant contends that the trial court erred in finding that the evidence was sufficient to prove that (1) the item appellant used during the commission of two robberies was a "firearm," and (2) appellant used or attempted to use a firearm or displayed a firearm in a threatening manner. Finding no error, we affirm the trial court's judgments and affirm appellant's convictions.

## I. BACKGROUND

On January 12, 2005, appellant entered a CVS Pharmacy, approached the pharmacy counter, and stated that he needed a bottle of Oxycontin. When the pharmacist asked appellant for his prescription, appellant lifted his shirt to reveal what looked like a black handgun tucked into the front of his pants. The clerk saw the gun but hesitated before appellant demanded that she "hurry up." The pharmacist gave appellant a bottle of generic Oxycodone ER. Appellant left the store with the bottle.

Nine days later, appellant entered a different CVS Pharmacy and asked the pharmacist whether they stocked Oxycontin. When appellant learned that the pharmacy had Oxycontin, he grabbed an object that appeared to be a black handgun from his waistband and pointed it at the clerk. The clerk described the gun as an older model handgun but was unsure whether it was a pistol or revolver. When appellant ordered the pharmacist to give him the drugs, the pharmacist gave appellant one bottle containing one hundred pills.

After appellant was arrested, police recovered a "John Wayne Replica" .45 caliber handgun made by the Franklin Mint. This commemorative replica appears the same in size,

weight, and shape as the original firearm. This replica, however, does not include a firing pin or other mechanical device necessary to fire a projectile. Appellant told police that this was the object he used during the robberies.

Appellant pled guilty to three counts of robbery but pled not guilty to two counts of use of a firearm in the commission of a felony, in violation of Code § 18.2–53.1. During his bench trial, appellant challenged whether the item he possessed met the definition of a firearm to support two convictions under Code § 18.2–53.1. As evidence against appellant in his trial for two counts of use of a firearm, the court admitted a document titled "Official Version of Offense" prepared by the Commonwealth for the Probation and Parole office and a diagram of the item possessed provided by the appellant. The "Official Version of Offense" stipulated that

> [t]his weapon is a commemorative replica. In its outward appearance, including size, weight, and shape, it appears to be an operational firearm designed to expel .45 caliber ammunition by explosion. However, because the weapon was a replica, the manufacturer did not include a firing pin or other mechanical device necessary to fire a projectile by explosion.

The "Care and Handling Instructions" accompanying the diagram stated

> You now own a non-firing replica of the Model M–1911 A1 U.S. Government Automatic Pistol John Wayne carried in most of his military films.
>
> Used in all services from World War I to Viet Nam, this legendary "hand howitizer" was so effective, it was not retired until 1986—after 75 years of continuous service.
>
> Although your re-creation will not permit chambering or firing of ammunition, proper handling is still important.
>
> Here's how to operate it:
>
> To release the 7–round magazine, press the *magazine catch* (17 in the diagram) and allow it to free fall. To replace, re-insert it into the receiver in front of the *lanyard ring* (15), then slam it shut with the heal of your hand.

Three different safety devices are provided: A *safety lock* (10) on the frame. A trigger disconnector, inside the *receiver* (20). And a *grip safety* (12) on the backstrap, which allows firing only if actually compressed while the trigger is being squeezed.

To operate, your non-firing re-creation, grip it as if to fire, but with your index finger *at the side of the receiver,* rather than on the trigger.

Next, use the thumb and forefinger of your non-shooting hand to grasp the *slide* (3) and pull it *backward* until it stops. Then let go and allow the recoil spring to carry it forward automatically. Do *not* ease the slide forward yourself.

To release the slide, push down the knurled area at the rear of the slide stop (6).

To help your replica retain its beauty and keep functioning properly, dust regularly and use a soft cloth to rub a good, three-in-one oil into its surface periodically. (*Never* remove the diamond grips (13) on either side of the receiver).

For safety's sake, always keep your free hand away from moving parts.

And finally, *never point a weapon at a living person.*

Upon a proffer of the evidence, the trial court convicted appellant of two counts of use of a firearm during the commission of a felony. This appeal follows.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE TO PROVE THAT THE ITEM APPELLANT USED IN THE COMMISSION OF THE ROBBERY WAS A FIREARM

Appellant relies on *Sprouse v. Commonwealth,* 19 Va.App. 548, 551–52, 453 S.E.2d 303, 305–06 (1995), to argue that a conviction under Code § 18.2–53.1 requires that the object displayed actually be a firearm and because the item he possessed was an inoperable, commemorative replica of a

firearm, he cannot be properly convicted of using a firearm during the commission of a felony. The Commonwealth responds that Code § 18.2–53.1 "not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." *Holloman v. Commonwealth,* 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980). Because the trial court found that appellant's commemorative replica firearm "appear[ed] to be an operational firearm designed to expel forty-five caliber ammunition," the Commonwealth contends that the replica firearm was indeed a firearm for the purpose of Code § 18.2–53.1.

■ To support a conviction under Code § 18.2–53.1, the Commonwealth must prove

(1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.

*Thomas v. Commonwealth,* 25 Va.App. 681, 684–85, 492 S.E.2d 460, 462 (1997) (citing *Yarborough v. Commonwealth,* 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994); *Sprouse,* 19 Va.App. at 551–52, 453 S.E.2d at 306). Code § 18.2–53.1 does not define "firearm" nor does it refer to any other statute that defines the term. "Even though any ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused, nevertheless a defendant is not entitled to benefit from an 'unreasonably restrictive interpretation of the statute.'" *Holloman,* 221 Va. at 198, 269 S.E.2d at 357 (quoting *Ansell v. Commonwealth,* 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

On a number of occasions, Virginia appellate courts have considered whether a given item fell within the statutory definition of a "firearm" as used in Code § 18.2–53.1, the statute proscribing the use of a firearm during the commission of a felony. The Supreme Court of Virginia in 1980 held that

the "evidence was sufficient to convict defendant of using a firearm in violation of Code § 18.2–53.1 upon proof that defendant employed an instrument which gave the appearance of having a firing capacity, whether or not the object actually had the capacity to propel a bullet by force of gunpowder." *Id.* at 199, 269 S.E.2d at 358; *see also Cox v. Commonwealth,* 218 Va. 689, 690–91, 240 S.E.2d 524, 525 (1978) (holding that a pistol loaded with wooden bullets and, therefore, incapable of firing was a firearm under Code § 18.2–53.1). There, the item Holloman used in the commission of a rape was an object that "appears in size, weight and shape to be a .45 caliber automatic pistol. Testimony showed it fires BBs by force of a spring, not by gunpowder. Markings on the black weapon indicate it is a .177 caliber 'Marksman Repeater' manufactured in 'Los Angeles 25, Calif.'" *Holloman,* 221 Va. at 197, 269 S.E.2d at 357.

In 1994, the Supreme Court revisited the definition of a firearm under Code § 18.2–53.1. In *Yarborough,* 247 Va. at 218–19, 441 S.E.2d at 344, our Supreme Court reversed a conviction where the evidence raised only a suspicion that Yarborough used a firearm while perpetrating a robbery. There, Yarborough approached a woman, informed her that "this is a stickup[,]" and demanded her money. *Id.* at 216–17, 441 S.E.2d at 343. Both of Yarborough's hands were in his pockets as he approached the woman and she saw "something protruding . . . from the right hand pocket of his jacket." *Id.* at 217, 441 S.E.2d at 343. In response, the woman gave Yarborough her money. *Id.* When he was apprehended a short time later, he had no weapons in his possession—only a chilled, unopened can of beer in one of his jacket pockets. *Id.* Despite searching the area near where the crime occurred and where Yarborough was arrested, no weapon was found. *Id.*

A year later, this Court considered whether a toy pistol was sufficient under Code § 18.2–53.1 to support a conviction. *Sprouse,* 19 Va.App. at 549, 453 S.E.2d at 304. In that case, the Commonwealth conceded at trial and on appeal that the item Sprouse displayed during the robbery was a toy gun. *Id.* at 549 n. 1, 453 S.E.2d at 304 n. 1. During the robbery,

Sprouse approached a store clerk and purchased a soda. *Id.* at 549, 453 S.E.2d at 304. Sprouse, who was only two to three feet away from the clerk, pulled out an object that appeared to be a real handgun and said, "This is a robbery." *Id.* The clerk believed the gun was real and was terrified that Sprouse would shoot and kill her if she did not comply with his demands. *Id.* A few days later, police found a black and silver toy pistol inside Sprouse's car. *Id.* at 550, 453 S.E.2d at 305. The officer who found the gun did not immediately recognize it to be a toy. *Id.* In *Sprouse*, this Court interpreted *Yarborough* to mean that

> if an object is used to inflict fear or intimidation to accomplish its purpose of rape or robbery, the fear or intimidation may be proved by showing that the victim had reason to believe the object was a firearm although, in fact, it was not a firearm. However, that defendant may not be convicted for the use of a firearm under Code § 18.2-53.1 unless the evidence discloses beyond a reasonable doubt that the object used to cause the victim to reasonably believe it was a firearm was, in fact, a firearm.

*Sprouse*, 19 Va.App. at 551–52, 453 S.E.2d at 305–06. This Court concluded that because the evidence failed to prove beyond a reasonable doubt that the item Sprouse used to "cause the victim to reasonably believe it was a firearm was, in fact, a firearm," he could not be properly convicted under Code § 18.2-53.1. *Id.* at 552, 453 S.E.2d at 306.

The next year, this Court held that a rusted, inoperable revolver was a firearm within the meaning of Code § 18.2-53.1. *Miller v. Commonwealth*, 23 Va.App. 208, 211–13, 475 S.E.2d 828, 829–30 (1996). There, the evidence proved that the rusted revolver could not "be fired 'because you couldn't put the ammo in it.'" *Id.* at 210, 475 S.E.2d at 829. The evidence further demonstrated "that a gunsmith would be able to restore the weapon, but would need to take the gun apart, then reassemble it." *Id.* The trial court "found that the rust on the gun did not affect its appearance" and "concluded that the weapon had not 'lost its identity as a firearm.'" *Id.* at 213, 475 S.E.2d at 830. Based on this, we held that the trial

court did not err and affirmed Miller's conviction for use of a firearm in the commission of a felony. *Id.*

This Court revisited whether the evidence was sufficient to support a conviction for use of a firearm during the commission of a felony in a case where the evidence proved that the appellant used a BB gun that was "the size, weight and shape of a small handgun." *Thomas,* 25 Va.App. at 684, 492 S.E.2d at 462. This Court interpreted *Yarborough* and other cases to require that the Commonwealth prove four elements for a successful prosecution under Code § 18.2–53.1:

> (1) that the accused "possessed" an object; (2) that this object was a "pistol, shotgun, rifle, or other firearm"; (3) that the accused "used or attempted to use the firearm or displayed the firearm in a threatening manner"; and (4) this action involving the firearm occurred during the commission or attempt to commit one of the felonies enumerated in the statute.

*Thomas,* 25 Va.App. at 684–85, 492 S.E.2d at 462 (citing *Yarborough,* 247 Va. at 218, 441 S.E.2d at 344; *Sprouse,* 19 Va.App. at 551–52, 453 S.E.2d at 306). This Court recognized that the Supreme Court's interpretation of "firearm" under Code § 18.2–53.1 "includes some objects that are not capable of firing projectiles by an explosion of gunpowder." *Id.* at 685, 492 S.E.2d at 462. This definition would include "instruments that merely appear to have a firing capability because the General Assembly intended Code § 18.2–53.1 'to discourage criminal conduct that produces fear of physical harm' and the victim of a crime 'can be intimidated as much by a revolver that does not fire bullets as by one that does.' " *Id.* at 685–86, 492 S.E.2d at 462 (quoting *Holloman,* 221 Va. at 198, 269 S.E.2d at 358); *see also Armstrong v. Commonwealth,* 263 Va. 573, 582–83, 562 S.E.2d 139, 144 (2002) (discussing how the definition of "firearm" is more narrow or more broad depending on the purpose of the statute in which it is used). "[T]he Supreme Court [also] reasoned that, as a practical matter, a crime victim 'cannot be required to distinguish between a loaded pistol and a spring gun when it is brandished during the commission of a felony.' " *Thomas,* 25 Va.App. at 685–86,

492 S.E.2d at 462 (quoting *Holloman*, 221 Va. at 198, 269 S.E.2d at 358). In *Thomas*, this Court ultimately concluded that the direct evidence of the BB gun's appearance, as observed by the victim during the robbery and demonstrated by examination of the item entered into evidence, excluded the possibility that the BB gun was a "toy pistol" and affirmed Thomas's conviction. *Id.* at 687–88, 492 S.E.2d at 463.

The Supreme Court of Virginia again addressed the issue of whether the evidence was sufficient to support a conviction for use of a firearm during the commission of a felony in *Powell v. Commonwealth*, 268 Va. 233, 602 S.E.2d 119 (2004). In *Powell*, the robber informed the victims that he had a gun. *Id.* at 235, 602 S.E.2d at 120. He had his hand in his pocket throughout the robbery and he behaved "in a nervous, fidgety manner[.]" *Id.* Despite that no gun was found when Powell was arrested a short time later, the Supreme Court affirmed his conviction. *Id.* at 235, 237, 602 S.E.2d at 120, 121. The Court reasoned that

[i]t was within the province of the trier of fact to consider all the evidence and resolve any conflicts. In this case, evidence that no gun was found conflicts with Powell's statements and actions during the commission of the offenses. The trier of fact resolved this conflict against Powell, and in doing so, necessarily concluded that Powell had a gun. In other words, the resolution of the factual conflict in this manner established beyond a reasonable doubt that Powell had a gun. Based on this record we cannot say that the judgment of the trial court was plainly wrong or without evidence to support it.

*Id.* at 237, 602 S.E.2d at 121.

Last year, this Court again considered the definition of "firearm" to support a conviction for use of a firearm during the commission of a felony where the evidence proved that the gun was a $CO_2$ operated, BB gun "expelling a projectile by pneumatic pressure." *Wubneh v. Commonwealth*, 51 Va.App. 224, 226, 656 S.E.2d 418, 419 (2008). There, the jury was instructed, without objection from Wubneh, that

A firearm is a weapon designed to expel a projectile by the explosion of gunpowder, by spring mechanism, or by pneumatic pressure. It is not necessary that the object actually have the capacity of firing a projectile, provided that it retains enough of its parts that it has not lost its appearance as a firearm.

*Id.* at 227, 656 S.E.2d at 419. This instruction was taken from the Virginia Model Jury Instructions.[1] *Id.* In *Wubneh,* this Court reiterated the principles behind Code § 18.2–53.1 and the cases interpreting it, discussed above. In a footnote, this Court stated that the instruction given in *Wubneh* is consistent with this Court's holding in *Sprouse,* 19 Va.App. at 551–52, 453 S.E.2d at 305–06. *Wubneh,* 51 Va.App. at 230 n. 5, 656 S.E.2d at 421 n. 5 (stating "[i]n this regard, we note that the firearm instruction at issue here is consistent with *Sprouse* in requiring that the subject instrument be 'designed' as a 'weapon' to 'expel a projectile' (even if it does not have the 'actual[ ] ... capability of firing a projectile, provided ... it has not lost its appearance as a firearm'). Virginia Model Jury Instructions, Criminal, No. 18.702").

█ It is undisputed that appellant possessed an object that he displayed during the commission of a robbery.[2] The parties stipulated that the item appellant used during the commission of two robberies is a replica of a military firearm that was manufactured and used by all branches of military service for seventy-five years. The record reveals that the primary difference between the Franklin Mint's John Wayne

---

1. Because Wubneh did not object to this instruction when proffered by the Commonwealth, one of the issues before this Court on appeal was whether Wubneh was entitled to the ends of justice exception to Rule 5A:18. *Wubneh,* 51 Va.App. at 227–28, 656 S.E.2d at 419–20. This Court ultimately held that there was "no miscarriage of justice warranting application of the ends of justice exception to Rule 5A:18 and the issue on appeal [was] procedurally defaulted." *Id.* at 232, 656 S.E.2d at 422. This Court, in reaching this determination, analyzed the issue on its merits and that analysis is discussed in this case.

2. Though appellant does not argue that he did not display an object, he does contend that he did not do so in a threatening manner. *See infra* § B.

commemorative .45 caliber weapon and the actual .45 caliber weapon used by the military was the putative firearm's inability to chamber and fire ammunition by explosion because the manufacturer did not include a firing pin or other mechanical device necessary to fire a projectile.

Thus, the issue in this case presents one of first impression to our Court: whether a replica firearm that is visually indistinguishable from a real firearm but incapable of expelling a projectile is a "firearm" for the purposes of Code § 18.2–53.1. As a starting point, it is important to note that a replica is "an exact copy ... executed by the original artist; a copy exact in all details." *Merriam–Webster's Collegiate Dictionary* 1056 (11th ed. 2004). Although *Sprouse* provides us with scant details about the object used, we know that it was a *toy* that appeared to be a weapon. *Sprouse,* 19 Va.App. at 549–50, 453 S.E.2d at 304–05. A toy is "something for a child to play with." *Merriam–Webster's Collegiate Dictionary, supra,* at 1323.

A replica is not *per se* a toy.[3] In evaluating whether the evidence was sufficient to prove that the item appellant used was a firearm, we must view the evidence in the light most favorable to the Commonwealth, granting to it "all reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Like the firearm in *Miller,* the firearm appellant used is incapable of chambering and firing ammunition, yet that does not mean that it has " 'lost its identity as a firearm.' " 23 Va.App. at 213, 475 S.E.2d at 830. Indeed, the description of the replica entered into evidence reveals that it has retained enough of its original parts that it has " 'not lost its identity as a firearm.' " *Id.* Specifically, the "John Wayne replica" contained a seven-round magazine, safety devices, trigger

---

3. Contrary to the dissent's suggestion, the record is silent as to whether the item was originally designed to be a firearm. Indeed, by the very fact that it is a replica of a weapon used by the military, one could infer that it was designed to be a firearm, exactly like the original firearm's purpose, but was rendered unable to chamber and fire ammunition by the omission of a firing pin.

disconnector, and movable slide. Although the replica could not chamber a round, it had the capacity to be "operate[d] ... as if to fire," if the grip safety was compressed while the trigger is being squeezed. Therefore, like the firearm in *Miller*, it was still a firearm.

> The purpose of Code § 18.2–53.1, keyed to serious crimes and prescribing inflexible penalties, is to deter violent criminal conduct. The statute not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm. Such fear of harm results just as readily from employment of an instrument that gives the appearance of having a firing capability as from use of a weapon that actually has the capacity to shoot a projectile. The victim of a crime can be intimidated as much by a revolver that does not fire bullets as by one that does. . . .

*Holloman*, 221 Va. at 198, 269 S.E.2d at 358 (citing *Ansell*, 219 Va. at 763, 250 S.E.2d at 762). Therefore, we conclude that the trial court did not err in finding that the item appellant used was a firearm for the purposes of Code § 18.2–53.1.

### B. SUFFICIENCY OF THE EVIDENCE TO PROVE THAT APPELLANT USED THE ITEM HE POS-SESSED IN A "THREATENING MANNER"

■■■ Appellant next contends that the evidence is insufficient to prove that he used or attempted to use a firearm or displayed a firearm in a threatening manner. "No ruling of the trial court ... will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. We have repeatedly stated that the purpose of " 'Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.' " *Neal v. Commonwealth*, 15 Va.App. 416, 422, 425 S.E.2d 521, 525 (1992) (quot-

ing *Martin v. Commonwealth,* 13 Va.App. 524, 530, 414 S.E.2d 401, 404 (1992)).

"The ends of justice exception is narrow and is to be used sparingly," and only when a trial court error is "clear, substantial and material." *Brown v. Commonwealth,* 8 Va.App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Id.* (citing *Mounce v. Commonwealth,* 4 Va.App. 433, 436, 357 S.E.2d 742, 744 (1987)). "In examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Lewis v. Commonwealth,* 43 Va.App. 126, 134, 596 S.E.2d 542, 546 (2004), *rev'd on other grounds,* 269 Va. 209, 608 S.E.2d 907 (2005). *See also Michaels v. Commonwealth,* 32 Va.App. 601, 529 S.E.2d 822 (2000); *Redman v. Commonwealth,* 25 Va.App. 215, 221, 487 S.E.2d 269, 272 (1997).

*Tooke v. Commonwealth,* 47 Va.App. 759, 764–65, 627 S.E.2d 533, 536 (2006). Appellant's argument, that he did not display a firearm in a threatening manner, is procedurally defaulted because it was not raised in the trial court. Though appellant asks this Court in his reply brief to invoke the ends of justice exception and consider the merits of this argument, such invocation is unwarranted as the record here does not provide us with "affirmative evidence of innocence or lack of a criminal offense." *Lewis,* 43 Va.App. at 134, 596 S.E.2d at 546.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions for use of a firearm during the commission of a felony. We further find that appellant failed to preserve his argument that he did not use or attempt to use a firearm or display a firearm in a threatening manner, and we decline to invoke the ends of justice exception to Rule 5A:18 because the record is

devoid of "affirmative evidence of innocence or lack of a criminal offense."

*Affirmed.*

ELDER, J., dissenting.

The Commonwealth stipulated that the replica used by appellant in the commission of the robberies was not designed to be an operable firearm capable of firing a projectile by any means. Therefore, I believe this Court's decision in *Sprouse v. Commonwealth*, 19 Va.App. 548, 453 S.E.2d 303 (1995), compels the conclusion that the replica was not a "firearm" under Code § 18.2–53.1, and I respectfully dissent. Because I would reverse the conviction on these grounds, I would not reach the issue of whether appellant displayed the item in a threatening manner.

The evolution of the term "firearm" as used in Code § 18.2–53.1 has taken a peculiar course, as the Supreme Court has relaxed the quantum of proof needed to sustain a conviction. The Court shifted the focus away from the actual firing capability of the object to the "deter[rence] of criminal conduct." *Holloman v. Commonwealth*, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980). However, the Court has limited this principle by requiring proof "that the accused actually had a firearm in his possession...." *Yarborough v. Commonwealth*, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994). Subsequent decisions have sustained convictions based solely on circumstantial evidence.[4]

---

4. Although the Court initially forbade conviction based solely on a victim's perception that the perpetrator possessed a firearm, *see Yarborough*, 247 Va. at 219–20, 441 S.E.2d at 344, it has subsequently held a conviction may be based upon circumstantial evidence that the perpetrator possessed a firearm, including evidence of the victim's belief or perception that the accused had a firearm, *Powell v. Commonwealth*, 268 Va. 233, 237, 602 S.E.2d 119, 121 (2004); *McBride v. Commonwealth*, 24 Va.App. 603, 605, 484 S.E.2d 165, 166 (1997), the accused's representations, *Elmore v. Commonwealth*, 22 Va.App. 424, 430, 470 S.E.2d 588, 590 (1996), and the instrument's physical appearance, *Thomas v. Commonwealth*, 25 Va.App. 681, 687, 492 S.E.2d 460, 463 (1997).

In *Sprouse*, this Court acknowledged that the focus of "preventing actual physical injury or death" and "discourag[ing] criminal conduct that produces fear of physical harm" must give way where the evidence affirmatively proves that the instrument used during the commission of a felony was not a firearm. *Sprouse*, 19 Va.App. at 550, 453 S.E.2d at 305 (quoting *Holloman*, 221 Va. at 198, 269 S.E.2d at 358). The object admitted into evidence provided such affirmative proof because "the Commonwealth conceded that it was a toy pistol." *Id.* While convincing in appearance, the toy could not "expel a projectile by force of gunpowder" and thus could not be a firearm.[5] *Id.*

Relying on *Wubneh v. Commonwealth*, 51 Va.App. 224, 656 S.E.2d 418 (2008), the majority attempts to distinguish the present case from *Sprouse* by stating that the replica "retains enough of its original parts that it has not lost its appearance as a firearm." I disagree with this reasoning in several respects. First and foremost, the language the majority cites from *Wubneh* comes not from a principle of law grounded in existing precedent, but from a jury instruction given without objection that was determined to be the law of the case. While this Court analyzed the portion of the instruction relating to whether an instrument firing a projectile by spring mechanism or pneumatic pressure could be a firearm, it did not hold that appearance could overcome a lack of firing capability. *See Wubneh*, 51 Va.App. at 228, 656 S.E.2d at 420. Quite the opposite, it acknowledged that *Sprouse* provided a caveat to the physical appearance rule and held that the BB gun was " 'designed' as a 'weapon' to 'expel a projectile.' " *Id.* at 230 n. 5, 656 S.E.2d at 421 n. 5 (quoting Virginia Model Jury Instructions, Criminal No. 18.702). Thus, *Wubneh* did not hold that an object fell within the definition of "firearm" if it contained a certain quantity of original parts. The only

---

5. Of course, an instrument capable of firing a projectile by a method other than explosion of gunpowder is also a firearm. *See, e.g., Holloman*, 221 Va. at 197, 269 S.E.2d at 357 (spring-loaded BB gun); *Wubneh v. Commonwealth*, 51 Va.App. 224, 226, 656 S.E.2d 418, 419 (2008) (gas-propelled BB gun).

pertinent analysis is whether the instrument had the capacity to fire a projectile.

Second, the majority's factual characterization that the replica has firing capability contradicts the stipulated facts in the record. While an instrument that originally had the capability to fire a projectile does not later "los[e] its identity as a firearm," *Miller v. Commonwealth*, 23 Va.App. 208, 213, 475 S.E.2d 828, 830 (1996), the replica used by appellant never had an identity as a firearm in the first place. The majority places too much weight on the description of the grip safety in the "Care and Handling Instructions" to infer that the replica had "firing capacity if the grip safety was compressed while the trigger is being squeezed." This is merely a description of one feature of the replica that does not reconcile with the rest of the record. For example, the "Official Version of the Offense" states "because the weapon was a replica, the *manufacturer* did not *include* a firing pin or other mechanical device necessary to fire a projectile by explosion." (Emphasis added). Moreover, the Care and Handling Instructions, while referring to the grip safety, clearly indicate that the "re-creation *will not permit* chambering or firing of ammunition." When viewed as a whole, the record does not suggest that the manufacturer altered an existing weapon capable of firing a projectile.[6] Rather, this language indicates that the replica was designed from its inception to lack a firing pin, and thus never capable of firing a projectile, whether by explosion of gunpowder, spring mechanism, or pneumatic pressure.

Finally, the majority seems to suggest that the replica's appearance is more important than its actual firing capability or lack thereof. This is plainly contrary to the holding in

---

**6.** The Official Version of the Offense and the Care and Handling Instructions are silent as to whether the replica was modified from an operational firearm or merely a non-operational facsimile. The parties chose not to introduce expert opinion testimony regarding the replica or even the replica itself to clarify the evidence. We must therefore base our analysis on the descriptions provided, keeping in mind that "ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused[.]" *Holloman*, 221 Va. at 198, 269 S.E.2d at 357.

*Sprouse.* While victim perception and physical appearance can provide compelling circumstantial evidence that the defendant used a firearm, *Sprouse*'s holding is limited to situations where the alleged instrument is not introduced into evidence. Where the instrument is provided to the fact finder, or the parties stipulate to its description, circumstantial evidence cannot overcome direct proof that the instrument is not, or never was, capable of firing a projectile. *See Thomas v. Commonwealth,* 25 Va.App. 681, 686–87, 492 S.E.2d 460, 463 (1997) (holding that an item's visual appearance can be evidence it is a firearm where the instrument in question actually has the ability to fire projectiles).

For these reasons, I would hold that the evidence is insufficient to prove that the replica used by appellant in the commission of the robberies was a firearm under Code § 18.2–53.1. Thus, I respectfully dissent from the majority's affirmance of appellant's convictions.