Present: Kinser, C.J., Lemons, Goodwyn, and Millette, JJ.,
and Russell, Lacy, and Koontz, S.JJ.[*]

DUANE ELMER STARTIN, JR.

v. Record No. 100778     OPINION BY JUSTICE DONALD W. LEMONS
                                                March 4, 2011
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals
erred when it affirmed the convictions of Duane Elmer Startin,
Jr. ("Startin") for use or display of a firearm in the
commission of a felony under Code § 18.2-53.1.

I.  Facts and Proceedings Below

On January 12, 2005, Startin entered a pharmacy in
Fairfax County and stated that he needed a bottle of
Oxycontin.  When the pharmacist asked him for a prescription,
Startin lifted his shirt to reveal an object that appeared to
be a black .45 caliber handgun tucked into the front waistband
of his pants.  The pharmacist saw the object and hesitated.
Startin told her to "hurry up, lady," and she handed him a
bottle containing 100 pills of Oxycodone, the generic name for
Oxycontin.  Startin left the store with the bottle.

On January 21, 2005, Startin entered a different store in
Fairfax County and asked the pharmacist whether "Oxycontin 80"

_____

  [*] Justice Koontz presided and participated in the hearing
and decision of this case prior to the effective date of his
retirement on February 1, 2011; Justice Kinser was sworn in as
Chief Justice on February 1, 2011.

was in stock.  After the pharmacist confirmed that this drug was in stock, Startin removed an object that appeared to be a black handgun from the waistband of his pants.  Startin pointed it at the clerk and demanded to the pharmacist, "give me the medicine, give me the medicine."  The pharmacist gave Startin a bottle containing 100 Oxycontin pills and Startin left the store.  Later, the clerk described the object as "a black older model handgun" but could not state whether it was a revolver or a pistol.

Startin was later arrested in Petersburg, Virginia for a robbery charge in that jurisdiction.  After being read his Miranda rights, Startin admitted to committing the robberies in Fairfax County and identified himself in several photographs taken by surveillance cameras during the robberies.  Startin further stated that the weapon he used during the robberies was a commemorative "John Wayne Replica" .45 caliber handgun ("the replica").

In its outward appearance, the replica has the same size, weight and shape of an operational firearm designed to expel .45 caliber ammunition by explosion.  At trial, the Commonwealth conceded that the replica was the object used or displayed by Startin during the robberies.  Startin pled guilty to three counts of robbery but pled not guilty to two counts of use of a firearm in the commission of a felony,

arguing that the replica did not meet the definition of a firearm under Code § 18.2-53.1. The parties stipulated that

> [t]his weapon is a commemorative replica. In its outward appearance, including size, weight, and shape, it appears to be an operational firearm designed to expel .45 caliber ammunition by explosion. However, because the weapon was a replica, the manufacturer did not include a firing pin or other mechanical device necessary to fire a projectile by explosion.

Based on this evidence, the trial court convicted Startin of two counts of use of a firearm during the commission of a felony under Code § 18.2-53.1. The trial court concluded that this Court's holding in Holloman v. Commonwealth, 221 Va. 196, 269 S.E.2d 356 (1980), presented the

> good policy . . . . to discourage criminal conduct that produces fear [of] physical harm. Because the victim can be intimidated as much by a pistol that doesn't fire bullets [as] by one that does.
>
> And in a crime, a victim can't distinguish between a loaded pistol and one that is designed to look precisely like one.

The trial court cited several other cases from this Court for the proposition that the items in these cases "were held to be firearms, because they appeared to be capable of firing." Accordingly, the trial court held that "the bottom line is that . . . the item that was used was a firearm, pursuant to Virginia Code Section 18.2-53.1." Startin was sentenced to 10 years with six years suspended for the two robbery convictions

3

and six years for the two convictions for the use or display of a firearm in the commission of a felony.

The Court of Appeals of Virginia affirmed Startin's two convictions for use of a firearm during the commission of a felony, Startin v. Commonwealth, 54 Va. App. 778, 682 S.E.2d 115 (2009), and also affirmed upon a rehearing en banc. Startin v. Commonwealth, 56 Va. App. 26, 690 S.E.2d 310 (2010). The Court of Appeals concluded that "Startin's replica of a firearm was certainly capable of evoking fear of physical harm" and therefore held that "the trial court did not err in finding that the item Startin used was a firearm for the purposes of Code § 18.2-53.1." Id. at 41, 690 S.E.2d at 317. Startin timely filed his notice of appeal to this Court.

## II. Analysis

### A. Standard of Review

This Court applies a de novo standard of review when addressing a question of statutory construction. Harris v. Commonwealth, 274 Va. 409, 413, 650 S.E.2d 89, 91 (2007); Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). Additionally, when considering the sufficiency of the evidence to sustain a conviction,

this Court reviews "the evidence in the light most favorable to the prevailing party at trial and consider[s] all inferences fairly deducible from that evidence." This Court will only reverse the judgment of the trial court if the judgment " 'is plainly wrong or without evidence to support it.' " "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial."

Clark v. Commonwealth, 279 Va. 636, 640-41, 691 S.E.2d 786, 788 (2010) (citations omitted).

### B. Display or Use of a Firearm in the Commission of a Felony

Startin argues that the Court of Appeals erred in holding that the evidence of his use of the replica in committing the robberies was sufficient to support his conviction under Code § 18.2-53.1. For the reasons set forth below, we disagree.

Under Code § 18.2-53.1, it is "unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery." We have held that in order to convict a person under this statute,

the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies.

5

Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994).

In Holloman, we explained that Code § 18.2-53.1 has dual objectives. 221 Va. at 198, 269 S.E.2d at 358. First, the statute criminalizes the use or display of an actual firearm that has the capability of expelling a projectile by explosion, including "any pistol, shotgun, rifle, or other firearm." Code § 18.2-53.1. Second, the statute also has the additional purpose of preventing fear of physical harm by the use or threatening display of an instrumentality that has the appearance of having the capability of an actual firearm. We explained that "[t]he statute not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." Holloman, 221 Va. at 198, 269 S.E.2d at 358. Therefore, the statute bears a broader meaning and includes those items which, although lacking the physical capability of firing a projectile by explosion, have the appearance of having the capability to do so.

In Holloman, we held that evidence showing that the defendant used a replica of a .45 caliber pistol that fired BBs by the force of a spring, but not gunpowder, was sufficient to convict him of using a firearm in the commission of a felony in violation of Code § 18.2-53.1. Id. at 197,

6

199, 269 S.E.2d at 357-58. We observed that "fear of harm results just as readily from employment of an instrument that gives the appearance of having a firing capability as from use of a weapon that actually has the capacity to shoot a projectile." Id. at 198, 269 S.E.2d at 358. Consequently, evidence of the display of the BB gun was sufficient to convict Holloman under Code § 18.2-53.1, "upon proof that defendant employed an instrument which gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder." Id. at 199, 269 S.E.2d at 358.

In Yarborough, we revisited the meaning of Code § 18.2-53.1 and reversed the defendant's conviction because it was based on evidence that merely raised a suspicion that he possessed a firearm while committing a robbery. 247 Va. at 218-19, 441 S.E.2d at 344. Yarborough had approached a woman and demanded her money, stating that "this is a stickup." Id. at 216, 441 S.E.2d at 343. The woman saw "something protruding . . . from [the] right hand pocket of his jacket," but when Yarborough was apprehended a short time later, he only had an unopened can of beer in one of his jacket pockets. Id. at 217, 441 S.E.2d at 343. No weapon or item that had the appearance of a weapon was in his possession, and none was found during the search of the crime scene or where Yarborough

7

was arrested.  Id.  In reversing his conviction, we stated that "the fact that [the victim] merely thought or perceived that [the defendant] was armed is insufficient to prove that he actually possessed a firearm."  Id. at 219, 441 S.E.2d at 344.  Therefore, any "evidence that Yarborough 'may have had' a firearm in his possession create[d] merely a suspicion of guilt" and was insufficient to show that Yarborough used a firearm or an item that had the appearance of a firearm in violation of Code § 18.2-53.1  Id. at 218, 441 S.E.2d at 344.

In our interpretation of Code § 18.2-53.1, we recognize that "[p]enal statutes must be strictly construed against the State and . . . cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit."  Department of Motor Vehicles v. Athey, 261 Va. 385, 388, 542 S.E.2d 764, 766 (2001) (citation and internal quotation marks omitted).  However, "[e]ven though any ambiguity or reasonable doubt as to the meaning of a penal statute must be resolved in favor of an accused, nevertheless a defendant is not entitled to benefit from an 'unreasonably restrictive interpretation of the statute.' " Holloman, 221 Va. at 198, 269 S.E.2d at 357 (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

Consistent with these principles, when the legislature seeks to criminalize the use of a firearm, the term "firearm"

may be defined differently among several criminal statutes and "must not be unreasonably restricted by judicial construction such that the legislative intent is thereby frustrated." Armstrong v. Commonwealth, 263 Va. 573, 581-82, 562 S.E.2d 139, 144 (2002).

In Armstrong, we distinguished between a "firearm" for purposes of Code § 18.2-53.1 as compared to Code § 18.2-308.2, penalizing possession of a firearm by a convicted felon. Id. at 581-84, 562 S.E.2d at 144-45. The definition is more narrowly construed under the possession statute, Code § 18.2-308.2, and requires proof that the defendant "possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion," although it is not necessary that the instrument is "operable [or] capable of being fired." Id. at 583-84, 562 S.E.2d at 145 (internal quotation marks omitted). In contrast,

> when the nature of some other criminal act is defined by whether the defendant achieves his purpose through the use of a firearm, a narrow construction of the term is not warranted. See, e.g., Johnson v. Commonwealth, 209 Va. 291, 296, 163 S.E.2d 570, 574 (1968) (charge that attempted robbery involved " 'presenting of firearms or other violence' " did not warrant jury instruction that the instrument displayed was an operable firearm).

Id. at 582, 562 S.E.2d at 144. Accordingly, the definition under Code § 18.2-53.1 for use or display of a firearm during

9

the commission of a felony warrants a "broad construction" and includes any instrument that "gives the appearance of being a firearm." Id. at 582-83, 562 S.E.2d at 144 (emphasis added). Therefore, in pursuing its objective of preventing fear of physical harm by an instrumentality that has the appearance of a firearm, Code § 18.2-53.1 encompasses a broader definition.

In this case, the replica used by Startin is similar to the BB gun in Holloman. In their outward appearance, both have the same size, weight and shape of an operational firearm designed to expel .45 caliber ammunition by explosion. 221 Va. at 197, 269 S.E.2d at 357. The only meaningful difference is the ability of the weapon in Holloman to propel BBs by the force of a spring. Id. Neither the replica nor the BB gun have a firing pin or any other mechanical device necessary to fire a projectile by explosion. Id. Therefore, neither the replica at issue here nor the BB gun in Holloman would be sufficient to convict a person under Code § 18.2-308.2 for possession of a firearm by a convicted felon because they are not "designed, made, and intended to fire or expel a projectile by means of an explosion." Armstrong, 263 Va. at 583, 562 S.E.2d at 145.

However, both are sufficient to support a conviction under the broader definition of firearm as used in Code § 18.2-53.1 and construed in our prior decisions applying the

statute.  While the replica used by Startin was not an actual operational firearm, it nonetheless was a weapon within the meaning of that term as used in this statute.  In affirming Startin's conviction, the Court of Appeals correctly held that

> [b]ecause Code § 18.2-53.1 is aimed at preventing actual physical injury or death, the term 'firearm' includes any instrument that is capable of expelling a projectile by force or gunpowder.  As importantly, the term firearm in Code § 18.2-53.1 also includes other objects that are not capable of firing projectiles but give the appearance of being able to do so.

Startin, 56 Va. App. at 38-39, 690 S.E.2d at 316 (quoting Thomas v. Commonwealth, 25 Va. App. 681, 685, 492 S.E.2d 460, 462 (1997)).  Startin's replica of a firearm gave the appearance of an actual firearm and was certainly capable of evoking fear of physical harm.  Consequently, we hold that the Commonwealth's evidence was sufficient to convict Startin of using a firearm in violation of Code § 18.2-53.1 upon proof that he "employed an instrument which gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder."  Holloman, 221 Va. at 199, 269 S.E.2d at 358.

### III.  Conclusion

For the reasons stated, we hold that the Court of Appeals did not err in affirming Startin's convictions for use or display of a firearm in the commission of a felony.

11

Accordingly, we will affirm the judgment of the Court of Appeals.

Affirmed.

SENIOR JUSTICE KOONTZ, concurring.

I concur with the Court's analysis and decision in this case. I write separately to stress that the commemorative "John Wayne Replica" .45 caliber handgun at issue in this case comes within the sweep of Code § 18.2-53.1 as we have construed that statute in Holloman v. Commonwealth, 221 Va. 196, 269 S.E.2d 356 (1980). Here, it is undisputed that this replica has the appearance of having the capability of expelling a projectile by explosion, although in fact it lacks that capability.

This is not a case where in the commission of a felony the defendant used or displayed an instrument which lacked the capability of expelling a projectile by explosion and also lacked the appearance of having that capability. Holloman requires that the instrument used or displayed by the defendant comport with one or the other characteristic in order to come within the sweep of Code § 18.2-53.1. Id. at 198, 269 S.E.2d at 358.

12