UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Decker
Argued at Lexington, Virginia


JAMAL KEMO SAUNDERS

                                                  MEMORANDUM OPINION* BY
v.        Record No. 0267-14-3          JUDGE MARLA GRAFF DECKER
                                                      JANUARY 27, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Sherron E. Ashby, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Jamal Kemo Saunders appeals from his conviction in a bench trial for possession of a

firearm by a convicted felon, in violation of Code § 18.2-308.2(A).[1]  Specifically, he suggests that

the Commonwealth failed to establish that the weapon in his possession was "designed, made, and

intended to fire or expel a projectile by means of an explosion."  The Court holds that the evidence

was sufficient to support the conviction and affirms the judgment of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The appellant was convicted under the subsection providing that "[i]t shall be unlawful
for any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age
or older at the time of the offense of a delinquent act which would be a felony if committed by an
adult" to knowingly and intentionally possess a firearm.  Code § 18.2-308.2(A)(iii).  The
elements relating to age and delinquency status are not in dispute in this appeal.  Therefore, for
simplicity, we refer to the conviction as one for possession of a firearm by a convicted felon, an
almost identical offense proscribed by a different subsection of the same statute and punishable
in the same manner.  Similarly, we refer to the appellant's acquittal for a second count of the
same crime, alleged to have been committed a day later, in this same shorthand fashion.

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

On the afternoon of July 4, 2013, Danny Roberts was walking home with friends when he encountered the appellant. Roberts walked past the appellant, who was sitting on the porch of a house along Roberts' route. The appellant "yelled out" at Roberts, who acknowledged him. The appellant said, "I'm going to shoot you in the face." Roberts saw an object in the appellant's hands, which he described as "a long rifle looking .22[,] like a .22 rifle" pointed at him. Specifically, Roberts explained that he knew "all guns," and he identified this one as a ".22 rifle gun."

Roberts "thought [the rifle] was real," and right after he saw it, the appellant "shot [him]." Roberts believed that the appellant fired the rifle twice. He did not hear a loud sound or "bang" but heard, instead, a sound "like . . . pshht (Indicating)." After the shots were fired, Roberts left the scene. When Roberts arrived home, his girlfriend told him that he had blood on his shirt. Roberts was surprised and said that he did not "feel it." He found the wound and "[p]atched it up."

The following morning, Roberts opened the front door to his house to let his mother inside. He saw the appellant running toward him and heard the appellant tell his mother to get out of the way, adding, "I'm going to kill him." Roberts' mother saw the appellant pull a handgun out of his bookbag. Roberts slammed the door, and his mother got back into her car and left.

Four days after the shooting, Roberts went to the hospital to be treated for his wound. Photographs of the injury were admitted into evidence at trial. Roberts identified the wound in the

---

[2] This Court "view[s] the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court." Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011). Examining "the record through this evidentiary prism requires [the Court] to 'disregard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence].'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

photographs as the injury from July 4. He also explained that he was scheduled to have surgery for the wound.

At the conclusion of the Commonwealth's evidence and again at the close of all the evidence, the appellant made a motion to strike. He argued that Code § 18.2-308.2 requires proof that the weapon was an actual firearm capable of producing or expelling a projectile by means of an explosion rather than by pneumatic pressure and that the evidence failed to meet that standard. He also pointed to the sound the weapon made when discharged and provided examples of evidence that he believed failed to support the conclusion that the victim was struck with a projectile or was seriously injured. The parties and the court also discussed the difference between the type of evidence necessary to prove the crime of possession of a firearm under Code § 18.2-308.2 and the more relaxed proof needed for the various other firearm offenses for which the appellant was on trial, including use of a firearm in the commission of a felony and brandishing a firearm.

The court denied the motions to strike and convicted the appellant of possession of a firearm by a convicted felon. The appellant was also convicted of malicious wounding in violation of Code § 18.2-51 and use of a firearm in the commission of a felony in violation of Code § 18.2-53.1, convictions not challenged on appeal. The court found the appellant not guilty of two offenses relating to the events of July 5, brandishing a firearm and a second count of possession of a firearm by a convicted felon. The court made clear that it found the testimony of Roberts and his mother credible regarding the events of July 5. However, it noted that the appellant was charged with brandishing the gun "to induce fear [in] Danny Roberts" and Roberts testified that he did not see the appellant with a gun on that date. The appellant was sentenced to five years in prison for the firearm offense that is the subject of this appeal.

## II. ANALYSIS

The appellant contends that the trial court erred by finding the evidence sufficient to convict him of possession of a firearm by a convicted felon. His specific challenge relates to proof that the weapon in his possession on July 4 was a "firearm" for purposes of Code § 18.2-308.2. He suggests that the evidence fails to establish that the weapon was "designed, made, and intended to fire or expel a projectile by means of an explosion" and that it could, instead, have been a pneumatic gun.

The appellant was tried by the circuit court, sitting without a jury. Consequently, that court was the fact finder and its judgment is afforded the same weight as a jury verdict. Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011). The trial court's decision will not be reversed unless it is "'plainly wrong or without evidence to support it.'" Id. (quoting Code § 8.01-680). The law is also clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify. Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); Redmond v. Commonwealth, 57 Va. App. 254, 265, 701 S.E.2d 81, 86 (2010). Further, the fact finder is responsible for determining what inferences are to be drawn from proved facts, provided that the inferences reasonably flow from those facts. See Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003); Burton v. Commonwealth, 58 Va. App. 274, 283, 708 S.E.2d 444, 449 (2011). Finally, if the evidence is sufficient to support the conviction, the reviewing appellate court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013); see Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).

This Court, however, reviews questions regarding the interpretation and application of a statute *de novo*. See Sarafin v. Commonwealth, ___ Va. ___, ___, 764 S.E.2d 71, 74 (2014)

(interpretation); Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 153 (2008) (interpretation and application). Code § 18.2-308.2(A), in pertinent part, states that it is unlawful for any person previously convicted of a felony "to knowingly and intentionally possess . . . any firearm." Although this code section does not define the term "firearm," the Supreme Court of Virginia has held that a firearm, for purposes of Code § 18.2-308.2, is "'any instrument designed, made, and intended to fire or expel a projectile by means of an explosion.'" Jordan, 286 Va. at 157, 747 S.E.2d at 801 (quoting Armstrong v. Commonwealth, 263 Va. 573, 583, 562 S.E.2d 139, 145 (2002)); see also Adjei v. Commonwealth, 63 Va. App. 727, 751-54, 763 S.E.2d 225, 237-38 (2014) (discussing the Armstrong definition of a firearm and applying it to the offense proscribed by Code § 18.2-308.2:01(B), possession of a firearm by an illegal alien). The Court further concluded that the definition does not require "any element of present capacity or operability." Jordan, 286 Va. at 157, 747 S.E.2d at 801; see also Barlow v. Commonwealth, 61 Va. App. 668, 672-73, 739 S.E.2d 269, 271-72 (2013). In addition, the definition of a firearm under Code § 18.2-308.2 does not include a pneumatic gun, which "propels a projectile by pneumatic pressure" rather than "by an explosion or discharge of gunpowder." Jones v. Commonwealth, 16 Va. App. 354, 356-58, 429 S.E.2d 615, 615-17, adopted on reh'g en banc, 17 Va. App. 233, 436 S.E.2d 192 (1993); see Armstrong, 263 Va. at 578 n.2, 583-84, 562 S.E.2d at 142 n.2, 145. Under other statutes, however, including Code § 18.2-53.1, which proscribes the use of a firearm in the commission of a felony, and Code § 18.2-308.4(C), which proscribes the use or display of a firearm while committing certain drug-related crimes, the definition of a firearm is "'broad[er]'" and "includes any instrument that 'gives the appearance of being a firearm.'" Startin v. Commonwealth, 281 Va. 374, 382, 706 S.E.2d 873, 878 (2011) (holding that a replica firearm, like a BB gun, may qualify as a firearm under the broader definition) (quoting Armstrong, 263 Va. at 582-83, 562 S.E.2d at 144); see 1 Va. Model Jury Instructions – Criminal, No. 18.616, pr. cmtry. (2012)

(stating that "[Code] § 18.2-308.4(C) is analogous to [Code] § 18.2-53.1" regarding what constitutes a firearm).

Whether an object is a firearm under the definition applicable to Code § 18.2-308.2, like any element of a crime, "may be proved by any direct or circumstantial evidence, as long as the evidence as a whole is sufficiently convincing to exclude all reasonable hypotheses of innocence." Boone v. Commonwealth, 63 Va. App. 383, 393, 758 S.E.2d 72, 77 (2014). However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence . . . ." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact. Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). Consequently, the fact finder's "rejection of a hypothesis of innocence" is binding on appeal unless plainly wrong, "*even* if there is 'some evidence to support' the hypothesis." Ervin v. Commonwealth, 57 Va. App. 495, 519, 704 S.E.2d 135, 147 (2011) (*en banc*) (quoting Hudson, 265 Va. at 513, 578 S.E.2d at 785).

The evidence, viewed in light of these principles, proved that the appellant possessed a firearm as that term is defined for purposes of Code § 18.2-308.2. Roberts was walking home when he passed the appellant. The appellant "yelled out" at Roberts and said, "I'm going to shoot you in the face." Roberts turned around and saw a weapon in the appellant's hands, which he described as "a long rifle . . . a .22 rifle" pointed at him. Roberts specifically testified that he was familiar with guns and identified the one he saw as a ".22 rifle gun." He further explained that he thought the rifle was real and right after he saw it, the appellant "shot [him]." Roberts heard the rifle fire twice. Although he did not hear a loud sound or "bang," he heard a sound "like . . . pshht," and he demonstrated this sound for the court. When Roberts arrived home immediately after the incident, he had blood on his shirt. He patched up the wound but went to the hospital four days later for

- 6 -

treatment. He testified that he was scheduled to have surgery for the wound on a later date. Photographs of Roberts' wound were admitted into evidence.

Roberts' testimony about his familiarity with guns, his specific description of the object that he saw in the appellant's hands, and his recounting of the events provided the trier of fact with an ample basis upon which to conclude that the object was a firearm for purposes of Code § 18.2-308.2. The appellant's direct threat to shoot Roberts during the July 4 encounter was an implied assertion that the object was a firearm and further supported Roberts' description of the object as a firearm. See Jordan, 286 Va. at 158, 747 S.E.2d at 801 ("The determination of how much weight to give to [the victim's] identification of the object . . . was a matter for the trier of fact."); Redd v. Commonwealth, 29 Va. App. 256, 259, 511 S.E.2d 436, 438 (1999) (holding that the defendant's threat to kill a store clerk was an implied assertion that the object she held, described "as 'a long black gun,'" was a firearm under Code § 18.2-308.2), cited with approval in Jordan, 286 Va. at 157-58, 747 S.E.2d at 801; cf. Holloman v. Commonwealth, 221 Va. 196, 197, 269 S.E.2d 356, 357 (1980) (in affirming a conviction under Code § 18.2-53.1, noting that "[t]he object in question . . . appear[ed] in size, weight and shape to be a .45 caliber automatic pistol" but the "[t]estimony showed it fire[d] BBs by the force of a spring, not by gunpowder"). This evidence was bolstered by the fact that the day after the shooting, the appellant went to the victim's home, told the victim's mother to get out of his way and said, "I'm going to kill him," referencing Roberts. Cf. Simon v. Commonwealth, 58 Va. App. 194, 206, 708 S.E.2d 245, 251 (2011) (holding that circumstantial evidence of a person's intent may include "statements and conduct of an accused *after* the events that constitute the charged crime" (emphasis added)).

Further, in addition to all of the other evidence in this case, Roberts sustained an injury consistent with a gunshot wound. Immediately upon his returning home, his girlfriend noticed blood on his shirt. Roberts dressed the wound and then, four days later, went to the hospital where

he was treated for the injury. The trier of fact also had the benefit of photographs of the injury, and the judge specifically stated that they were "strong evidence" that Roberts was struck by a projectile. See generally Perry v. Commonwealth, 61 Va. App. 502, 513-14, 737 S.E.2d 922, 928-29 (2013) (holding, in view of the entire record, that the evidence was sufficient to prove the defendant possessed a firearm based on testimony of witnesses and admission of the firearm into evidence). This evidence, combined with Roberts' testimony regarding the threat, the weapon he saw, and what happened after he observed the firearm pointed at him, supports the trial court's conclusion that the weapon was a firearm for purposes of Code § 18.2-308.2.

The appellant urges us to accept one of several hypotheses of innocence that the weapon he used on July 4 did not meet the definition of firearm. He suggests that the victim's account concerning the sound the weapon made when fired was inconsistent with the loud sound that he claims a rifle would make when discharged. The appellant also relies on the victim's testimony that he did not feel anything when he was shot and was able to walk home and delay hospital treatment by several days. Based on these arguments, the appellant concludes that the evidence did not prove that the weapon was an actual firearm rather than a pneumatic gun.

The appellant's arguments go to the assessment of the weight of the evidence and the credibility of the victim, decisions for the trier of fact. See Taylor, 256 Va. at 518, 506 S.E.2d at 314. His various "hypotheses of innocence," which he attempts to apply to the evidence or suggests are reasonable inferences based on common knowledge, were argued to the trial court and rejected. The law is clear that whether a defendant's hypotheses of innocence are reasonable is a question of fact, and here in each instance that question was resolved against him by the trial court sitting as trier of fact. See Ervin, 57 Va. App. at 519, 704 S.E.2d at 147 (holding that the fact finder's rejection of a hypothesis of innocence in favor of a theory of guilt supported by the evidence is binding on appeal unless plainly wrong).

No evidence supports the appellant's contention that the sound a .22 caliber rifle makes is louder than the sound heard by the victim, who was in fear for his life. Nor is that an inference that would reasonably flow from the evidence. Similarly, nothing in the record supports the conclusion that just because the victim did not "feel" the gunshot wound from a .22 caliber weapon, was able to walk home, and went to the hospital only after having first self-treated the wound, he was not shot with a firearm. The trial court heard the witnesses, viewed the evidence, and determined that the weapon used was a firearm, "designed, made, and intended to expel a projectile by means of an explosion." The record, viewed in the light most favorable to the Commonwealth, entirely supports the trial court's conclusion that the appellant pointed a firearm at Roberts, told him he would shoot him in the face, and then shot him.

The appellant also argues that the trial court applied the wrong definition of a firearm when it convicted him of violating Code § 18.2-308.2. In support of this contention, he relies on the discussion the court had with counsel at the time of the motion to strike in which the court recited the model jury instruction relevant to Code § 18.2-308.4(C).[3] The appellant suggests that because that definition of a firearm is more expansive than the one for a Code § 18.2-308.2 offense, the court erred by considering the broader definition in finding that the object was a firearm.

In our review of this point, we follow the well-established principle that a trial court is presumed to know the law and to properly apply it to the facts in a case. Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Groves v. Commonwealth, 50

---

[3] The court apparently referenced Virginia Criminal Model Jury Instruction No. 18.616, which applies to Code § 18.2-308.4(C). The appellant was not charged with an offense under that code section, but he was charged with violating Code § 18.2-53.1, to which the same definition of a firearm applies. See 1 Va. Model Jury Instructions – Criminal, No. 18.616, pr. cmtry. (2012) (stating that "[b]ecause [Code] § 18.2-308.4(C) is analogous to [Code] § 18.2-53.1, the definition of firearm applicable to that section is replicated here" (citing Instr. No. 18.702)).

Va. App. 57, 61-62, 646 S.E.2d 28, 30 (2007). This presumption can be overcome only by clear evidence to the contrary. Yarborough, 217 Va. at 978, 234 S.E.2d at 291. An isolated statement by a judge simply will not rebut the presumption. Riner v. Commonwealth, 40 Va. App. 440, 478-79, 579 S.E.2d 671, 690-91 (2003), aff'd, 268 Va. 296, 601 S.E.2d 555 (2004). When considering whether a trial court applied an incorrect legal standard, the judge's comments must be viewed in context, keeping in mind the legal requirements on appellate review. See Yarborough, 217 Va. at 978, 234 S.E.2d at 291 ("[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied."); see also Bassett v. Commonwealth, 13 Va. App. 580, 583-84, 414 S.E.2d 419, 421 (1992) (holding that a "trial court's remark is not, in and of itself, 'the full context' simply because it represents the only point at which the court [expressly] addressed the issue [in dispute]").

In this case, the record demonstrates that although the trial court mentioned the model jury instruction for a different firearm offense, it did not misapply the law and, instead, used the correct legal definition of firearm, applicable to Code § 18.2-308.2, for the instant offense. The context of the discussion is important. Several firearm offenses were before the court. Arguments of counsel addressed a variety of challenges and included references to different evidence. Reading the record as a whole supports the conclusion that the trial court did not err.

The appellant argued to the trial court that Code § 18.2-308.2 requires proof that the weapon be an actual firearm capable of producing or expelling a projectile by means of an explosion rather than pneumatic pressure and that the evidence failed to meet that standard. He asserted that the sound the object made when discharged was inconsistent with this definition. He also contended that there was neither specific evidence as to the type of wound sustained by the victim nor evidence of a "projectile inside of him." Counsel and the court discussed the difference between proof of the crime of possession of a firearm by a convicted felon and the more relaxed proof of the crime of use

of a firearm in the commission of a felony. The prosecutor pointed out that the victim described the weapon as a .22 caliber long rifle. He also referenced the evidence of the victim bleeding and the associated wound. The court indicated that the photographs of the wound were "strong evidence" that the victim "was, in fact, struck by a projectile."

The appellant subsequently acknowledged that brandishing, a charge based on the incident of July 5, did not require proof of a real firearm, but he again asserted that possession of a firearm by a convicted felon did require such proof. The trial court responded, "*All right.*" (Emphasis added). The prosecutor then argued that the evidence proved, "[a]t the very least[,] the [malicious] wounding" of July 4, because, "whether it [was] a pistol or a long rifle or a pellet gun, it caused a wound." The trial court noted, in addition, that a pellet gun is "capable of . . . expelling a projectile by force," and it pointed out that this action fit under the broad definition of a firearm in Code § 18.2-308.4(C). Although the appellant was not charged with an offense under that code section, he was charged under Code § 18.2-53.1 with using a firearm in the commission of a felony, which employs the same broad definition of a firearm quoted by the court. See 1 Va. Model Jury Instructions – Criminal, No. 18.616, pr. cmtry. The court then recited that broad definition, stating, "'[A] firearm is any instrument that is capable of expelling a projectile by force or gun powder,' but it also defines a firearm as 'an object that is not capable of expelling a projectile by force or gun powder but gives the appearance of being able to do so.'" The court concluded, "[H]ere we have evidence that it produced a projectile." The prosecutor told the court he would review the law but added, "Quite candidly, Judge, I would respectfully submit we have evidence that *it produced a projectile and . . . is a firearm 'cause he's identified it as a .22.*" (Emphasis added). The court responded, "*Yeah.*" (Emphasis added).

A reasonable reading of the trial court's lengthy discussion with counsel is that the court was pointing out that even if the weapon was a pellet gun as the appellant had argued, the appellant

- 11 -

could be convicted not only of malicious wounding, as the Commonwealth had argued, but, in addition, of using a firearm in the commission of that offense. Nothing in the trial court's exchange with counsel indicates either that the court intended to apply that broad definition of a firearm to the Code § 18.2-308.2 charge or that it in fact did so. At no point did the court disagree with the definition of a firearm that the appellant advanced as applicable to the instant offense. Further, the appellant never expressed concern to the trial court that he believed it had invoked an incorrect definition of firearm for purposes of the Code § 18.2-308.2 charge.

When the arguments, inquiry about the jury instruction, and comments by the trial court are reviewed in context, the record fails to establish that the court misunderstood the law. As a result, we apply the presumption that the court knew and properly applied the law and was aware that the definition of a firearm for purposes of the instant offense was the narrower definition requiring that it be "designed, made, and intended to fire or expel a projectile by means of an explosion" rather than by pneumatic pressure, see Armstrong, 263 Va. at 578 n.2, 583-84, 562 S.E.2d at 142 n.2, 145. The record also makes clear that the court believed that the weapon was a firearm that expelled a projectile by means of an explosion because it was a .22 caliber rifle, a conclusion consistent with the finding of guilt.

## III. CONCLUSION

We hold that the evidence was sufficient to prove that the object in the appellant's possession on July 4 was a firearm, "designed, made, and intended to fire or expel a projectile by means of an explosion" as required to support his conviction under Code § 18.2-308.2. We further hold that the record fails to rebut the presumption that the trial court applied the correct law regarding the definition of firearm. Consequently, we affirm the appellant's conviction for possession of a firearm by a convicted felon.

Affirmed.