COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, AtLee and Callins
Argued at Richmond, Virginia


ALFREAD JEROME WYCHE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0534-23-2                   JUDGE DOMINIQUE A. CALLINS
                                                      NOVEMBER 26, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

(Jacquelyn F. Gerlach; Gordon, Dodson, Gordon & Rowlett, on
brief), for appellant.  Appellant submitting on brief.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Sitting without a jury, the Circuit Court of the City of Petersburg convicted Alfread

Wyche of 20 felony offenses[1] relating to abduction, robbery, burglary, and use of a firearm in the

commission of a felony.  The trial court sentenced Wyche to a total of 193 years' incarceration,

with all but 43 years suspended.  On appeal, Wyche contends that the trial court erred in finding

the evidence sufficient to sustain his convictions.  We disagree, and affirm the judgment of the

trial court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The record reflects that Wyche was indicted, among other things, for six counts of
conspiracy to commit various offenses including abduction, robbery, and burglary.  Although
these six charges were brought as conspiracy offenses, the circuit court's sentencing order
reflects that Wyche was convicted of the corresponding completed offenses for each of these six
conspiracy charges.  To the extent that these discrepancies were in error, Wyche does not
challenge them."

BACKGROUND[2]

In 2021, Dahnequa Reavis, her mother, Barbara Brown, her daughter, T.R., and her niece, D.H., were living in the City of Petersburg. In the early morning hours of June 1, Reavis awoke when D.H. entered her room, led at gunpoint by Wyche and Eric Morgan. The men were armed and wearing masks. Wyche "pointed a beige AR-15 in [Reavis's] face" and demanded her wallet, cell phone, and money. With his weapon trained on Reavis, Wyche ordered her and D.H. into the living room, where Reavis's mother and daughter were sleeping. The men combed the home to find electronics and prescription medication and, after having completed the robberies,[3] continued to demand money and valuables. Wyche and Morgan left the home "after they realize[d] [there] was . . . really nothing else that they c[ould] get."[4] Wyche warned Reavis that if she told anyone about what happened they would come back. Because Wyche and Morgan had taken her phone, Reavis could not approximate the length of time Wyche and Morgan spent in the home. However, Reavis observed that the men "took their time." Brown estimated that Wyche and Morgan were in the home for 15 to 20 minutes, while D.H. put the figure at 20 to 30 minutes.

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] The trial court found that Morgan and Wyche were "demanding more items, . . . searching for more items, and they're unable to find them. But that's not necessary for them to already commit these robberies that they have already committed."

[4] When providing the quoted response, Reavis also testified that she was "a working mom," didn't "have much," and was "single." Wyche's counsel objected to these specific statements, arguing that "[t]he stuff about not having much and being a single mom" was "not relevant today." The trial court sustained the objection.

Reavis "found [her] brother at his home," who called the police on her behalf. When police arrived, they used a K-9 dog to track Wyche and Morgan and subsequently stopped Morgan driving a Chevy Impala "[p]robably less than a mile" from the home. Police searched the car and found a paintball gun, facemasks, and multiple cell phones. Later, forensic testing developed a DNA profile attributable to Wyche on one of the masks.

At trial, Reavis and Brown positively identified Wyche as one of the two men who robbed them. Reavis stated that although Wyche had a mask "sitting on his face" when he entered her room, "he took it off and set it on his head like a hat." Brown testified that after Morgan saw that T.R., who was crying, was a "child," Wyche and Morgan took off their masks and then exited through the front door of the home. D.H., in addition to identifying Wyche, testified that before that evening she had seen a picture of Wyche and Morgan on Facebook "with one of the guns they had." D.H. further acknowledged that she recognized the pair from the photograph, since, while in the living room, Wyche and Morgan "had their masks down to the point where [she] could see their face." The trial court also heard from Morgan, who testified that he and Wyche planned to "hit a lick"—meaning, rob someone—and entered the home through an open window. Morgan largely corroborated the victims' testimony, specifically the series of events and the items taken.

The trial court convicted Wyche of 20 felony offenses.[5] At a later sentencing hearing, the trial court sentenced Wyche to 193 years' imprisonment, with 150 years suspended. Wyche appeals.

---

[5] The trial court dismissed one charge of maliciously wounding D.H. and using a firearm in the commission of that felony during Wyche's motion to strike.

ANALYSIS

Wyche claims that the evidence was insufficient to identify him as one of the perpetrators and to show that he used a firearm. He also contends that any abduction was incidental to the robberies.[6]

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by

---

[6] Additionally, Wyche's third assignment of error asserts that the trial court erred in convicting him of "nine counts of Use of a Firearm [in] a Felony because the evidence was insufficient to show that the firearm was used before the felonies were committed." On brief, Wyche specifies, "[f]or *burglary convictions*, the Commonwealth is required to prove that the firearm is used before entry into the home is fully accomplished." (Emphasis added.) Wyche was convicted of nine use of a firearm in the commission of a felony offenses under Code § 18.2-53.1—three related to Wyche's robbery counts, five in connection with abduction, and one in relation to a conspiracy to commit abduction count. None of the indictments reflect that Wyche was charged with a use of a firearm offense in connection with a burglary.

Accordingly, Wyche's argument perilously misses the mark by failing to address any of the nine counts of use of a firearm in the commission of a felony for which he was convicted. Thus, we need not consider the issue Wyche raises under this assignment of error. Rule 5A:20(c)(2) ("An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient.").

the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

I.  The eyewitness identification of Wyche was sufficient to sustain his convictions.

Wyche argues that the victims' testimony harbored "multiple discrepancies" related primarily to the color of the masks and clothes worn by the intruders.  Noting that the victims were "terrified" the night of the "event," Wyche also claims that the victims "had trouble remember[ing]" which of the perpetrators said what and that only one victim, D.H., had seen Wyche on Facebook.  Thus, Wyche floats speculatively, because "[i]f it is possible to make mistakes of these types of issues, it is more than possible to mistake a suspect's identity."  Such speculations, however, cannot serve as a basis to disturb the trial court's judgment.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt."  *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)).  "To determine the reliability of a victim's eyewitness identification and to evaluate the likelihood of misidentification due to any suggestive factor, the fact finder shall consider" the following:

> the opportunity of the witness to view the criminal at the time of
> the crime, the witness' degree of attention, the accuracy of the
> witness' prior description of the criminal, the level of certainty
> demonstrated by the witness at the confrontation, and the length of
> time between the crime and the confrontation.

*Brown v. Commonwealth*, 37 Va. App. 507, 522-23 (2022) (quoting *Townes v. Commonwealth*, 234 Va. 307, 331 (1987)).  We review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances."  *Id.* at 523 (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

Wyche's argument hinges on inconsistencies between the victims' testimony, but it is well-established that "[p]otential inconsistencies in testimony are resolved by the fact finder," not

this Court. *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). The trial court heard argument that the victims testified inconsistently about "the clothing that the individuals were wearing," "whether or not the mask was fully on their faces," "the color of the masks," and "whether or not Mr. Wyche made a statement as he was leaving the house." The trial court pointed out, however, that the three witnesses had seen Wyche's face either during or before the robbery. Thus, it "ha[d] no concerns about these three witnesses IDing this defendant."

Moreover, in finding Wyche guilty of the offenses, the trial court observed that Reavis's testimony carried special weight by virtue of her training as a corrections officer and that D.H. was "completely composed . . . while she testified," notwithstanding her young age. Therefore, the trial court could rely on D.H.'s statement that she had seen a picture of Wyche and Morgan on Facebook *before* that night, and recognized Wyche from the photograph.

The Commonwealth also presented further evidence corroborating the victims' identification. Wyche's co-conspirator, Morgan, identified Wyche as perpetrating the robbery. The police recovered a mask from Morgan's car, resembling that worn by one of the robbers. Moreover, the DNA profile developed from that mask was attributable to Wyche. These circumstances, in their totality, more than sufficed to prove Wyche's identity as the perpetrator of the crime. *See Brown*, 37 Va. App. at 523. It follows that the judgment of the trial court was not plainly wrong or without evidence to support it. *See McGowan*, 72 Va. App. at 521.

II. A paintball gun is a "firearm" for the purposes of Code § 18.2-53.1.

Wyche asserts that to be convicted of an offense under Code § 18.2-53.1, the Commonwealth must have "prove[d] that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies." Wyche seems to conclude that because the firearm here was not a firearm at all, but rather a paintball gun, and a

law enforcement officer testified that the gun was not "real," the Commonwealth failed to meet this burden. Wyche's arguments turn on a misapprehension of the statute at issue.

"[T]he definition under Code § 18.2-53.1 for use or display of a firearm during the commission of a felony warrants a 'broad construction' and includes any instrument that 'gives the appearance of being a firearm.'" *Startin v. Commonwealth*, 281 Va. 374, 382 (2011) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 582-83 (2002)). "The purpose of Code § 18.2-53.1, keyed to serious crimes and prescribing inflexible penalties, is to deter violent criminal conduct." *Holloman v. Commonwealth*, 221 Va. 196, 198 (1980). Hence, the statute is not only "aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." *Id.* "Such fear of harm results just as readily from employment of an instrument that *gives the appearance* of having a firing capability as from use of a weapon that actually has the capacity to shoot a projectile." *Id.* (emphasis added). Put more concretely, "[t]he victim of a crime can be intimidated as much by a revolver that does not fire bullets as by one that does; such victim cannot be required to distinguish between a loaded pistol and a spring gun when it is brandished during commission of a felony." *Id.*

The testimony at trial proved that the "firearm" used was a realistic, AR-15 style paintball gun. Reavis and Brown both testified that they thought the gun was real and recalled that they were terrified of the gun pointed at them. At trial, Detective Mahoney, who was involved in the case, offered testimony that corroborated this assessment, noting that although the gun "looked like a rifle, . . . it ended up being a paintball gun."

Thus, the gun Wyche wielded during the robbery meets the threshold requirements for a conviction under Code § 18.2-53.1, since it gave "the appearance of being a firearm," *Startin*, 281 Va. at 382 (quoting *Armstrong*, 263 Va. at 582), and in turn, "produce[d] fear of physical harm," *Holloman*, 221 Va. at 198. Simply put, Wyche is wrong: Code § 18.2-53.1 does not require that the

firearm in question be "real." *See Startin*, 281 Va. at 382-83 (finding an inoperable replica firearm sufficient to support conviction under this statute); *Powell v. Commonwealth*, 268 Va. 233, 237 (2004) (holding that the evidence was sufficient to convict appellant under Code § 18.2-53.1 where appellant conveyed to victims that he had a gun, issued threats, was "fidgety," and had "his hand in his pocket," even though the victims saw no gun and no gun was recovered); *Holloman*, 221 Va. at 197-99 (holding that a BB gun is a firearm under Code § 18.2-53.1); *cf. Miller v. Commonwealth*, 23 Va. App. 208, 212-13 (1996) (finding a rusted and inoperable revolver is a "firearm" for Code § 18.2-53.1 purposes).

Accordingly, we will not disturb the trial court's determination that the evidence was sufficient to find that the paintball gun Wyche wielded the night of the robbery qualified as a firearm under Code § 18.2-53.1. *See Vasquez*, 291 Va. at 248.

III. The trial court did not err when it convicted Wyche of both abduction and robbery.[7]

Wyche contends that his abduction convictions must fail since the subject "abduction charges were incidental to the robbery charges" and "[t]he only reason the victims were detained was to effectuate the robbery, nothing further beyond that." Referencing *Bell v. Commonwealth*, No. 0318-02-1, slip op. at 5, 2003 Va. App. LEXIS 373, at \*6 (July 1, 2003), Wyche observes that "[a] defendant cannot be convicted of both abduction and attempted robbery unless 'the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of' the second offense." *Id.* (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985)). We disagree with Wyche's contention, finding instead that because the "detention[s] exceeded the minimum necessary to complete the required

---

[7] "Whether an abduction is merely incidental to another crime is a question of law." *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004). "However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case. We defer to the trial court's findings of historical fact, but we review *de novo* the trial court's application of those facts to the law." *Id.*

elements of the" robbery offenses, the abduction charges were not merely incidental to the robberies. *See Lawlor v. Commonwealth*, 285 Va. 187, 225 (2013).

Virginia's abduction statute "combines the common law offenses of kidnapping, abduction, and false imprisonment 'into one statutory felony.'" *Clanton v. Commonwealth*, 53 Va. App. 561, 567 (2009) (en banc) (quoting *Walker v. Commonwealth*, 47 Va. App 114, 120 (2005)). Specifically, "Code § 18.2-47(A) provides that '[a]ny person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of "abduction."'" *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (alterations in original). "[T]he *actus reus* of the crime is a taking, transporting, or detention of another, while the *mens rea* of the crime is a specific intent to deprive another of her liberty." *Brown v. Commonwealth*, 74 Va. App. 721, 730-31 (2022). However, "Code § 18.2-47 does not require the asportation of a victim from one place to another." *Id.* at 731 n.5.

Moreover, as this Court has stated, "[i]t remains an unshakable maxim that 'robbery is a common law crime in this State and while our statute, [Code § 18.2-58], regulates the punishment, it does not attempt to define robbery, but it leaves the crime as it was defined at common law.'" *Chappelle v. Commonwealth*, 28 Va. App. 272, 274 (1998) (second alteration in original) (quoting *Brookman v. Commonwealth*, 151 Va. 522, 525 (1928)). "The essential elements of common law robbery are '(1) a felonious taking, (2) accompanied by an asportation of (3) personal property of value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) *animo furandi* (with the intent to steal).'" *Id.* at 274-75 (quoting 67 Am. Jur. 2d *Robbery* § 12 (1998)).

As both an empirical and legal matter, "abduction generally inheres in a . . . robbery because 'there is usually some detention, and often a seizure, of the victim.'" *Hoyt v.*

*Commonwealth*, 44 Va. App. 489, 492 (2004) (quoting *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)). But, in *Brown v. Commonwealth*, 230 Va. 310 (1985), the Supreme Court declined to consider whether a robbery and abduction conviction, standing together, offends the Double Jeopardy Clause, finding that such an inquiry was not required, since "in the enactment of the abduction statute the General Assembly did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense." *Id.* at 314; *cf. Garrett v. United States*, 471 U.S. 773, 778 (1985) ("Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense.").

Instead, our Supreme Court held,

> abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses *only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime*.

*Brown*, 230 Va. at 314 (emphasis added). The Court later in *Lawlor v. Commonwealth* refined the parameters for application of the incidental detention doctrine, explaining that "[t]he only issue when abduction is charged alongside an offense for which detention is an intrinsic element" reduces to one consideration: "whether any detention exceeded the minimum necessary to complete the required elements of the other offense." 285 Va. at 225.

Application of the *Lawlor* standard shows that the detentions at issue were not merely incidental to Wyche's robbery offenses.

A. *Wyche's Detention of Reavis*

The abduction of Reavis "exceeded the minimum necessary to complete the required elements of the" robberies. *Id.* Wyche marched Reavis from the bedroom—where he took her money—into the living room where he held her at gunpoint, a measure beyond that which was necessary to complete the elements of the robbery. Hence, Wyche's detention of Reavis was not merely incidental to the robbery.

B. *Wyche's Detention of Brown*

The record shows that Wyche took Brown's cell phone—the crime for which he was indicted and convicted—sometime *before* the detention ended. After having been brought into the living room, Wyche and Morgan "interrogated" the family, "ask[ing] for . . . more money, more items," and thereafter "took turns going into different rooms retrieving items." While in the living room, Reavis observed that Wyche and Morgan had confiscated a number of the family's belongings, including Brown's cell phone. After Wyche and Morgan's search of the home failed to reveal additional items, Wyche became "very aggressive," such that Morgan "t[old] him to calm down and put the gun away because [there] was a child there."

Consistent with these facts, the trial court found that Wyche and Morgan continued to demand items from and detain the family *after* having completed the robberies. *See Meade v. Commonwealth*, 74 Va. App. 796, 814 (2022) ("Because this represents a factual finding of the trial court, we are bound by the conclusion 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 292 (2010))). In other words, Wyche continued to detain Brown even after having completed the elements of the offense. *See Chappelle*, 28 Va. App. at 274-75. Thus, contrary to Wyche's contention, his detention of Brown was not merely incidental to the robbery.

Moreover, the actions Wyche took with respect to Brown during the detention lend further support to the conclusion that Brown's detention exceeded the minimum necessary for Wyche to complete the robbery. When Wyche held Brown at gunpoint, she reflexively hoisted her hands into the air. Wyche commanded that she "[p]ut [her] hand down," but Brown "couldn't put [her] hand down because [she] kept saying, Lord. Lord. Lord. Lord. We don't have no money." Thus, through this interaction, Wyche sought to exercise a degree of control over Brown by directing her exact movements, beyond what was required to carry out the robbery. *Cf. Wiggins v. Commonwealth*, 47 Va. App. 173, 190 (2005) (determining that the control the appellant exercised over the victim's "exact movements" through the specific instruction he issued, when combined with other factors, "rendered the degree of restraint used during t[he] . . . robbery greater than that strictly necessary to accomplish the robbery itself"); *Phoung v. Commonwealth*, 15 Va. App. 457, 462 (1992) (finding that "the binding of [a] victim's hands and feet together are not acts inherent in the crime of robbery").

C. *Wyche's Detention of T.R.*

Last is Wyche's abduction of T.R. But T.R. was not the victim of another charged crime. Hence, the very premise upon which Wyche's argument depends collapses, since T.R.'s detention could not have been incidental to another crime.

\* \* \*

Accordingly, we find no error in the trial court's determination that the evidence was sufficient to support the subject abduction and robbery convictions, since the restraint used against Reavis and Brown exceeded that inherent in a robbery. *See Lawlor*, 285 Va. at 225.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

- 12 -